UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| INDIANA HARBOR BELT RAILROAD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED TRANSPORTATION GROUP, INC. and MICHAEL V. PELLIN, individually and d/b/a United Rail Service Inc.,<br><br>Defendants. | CAUSE NO.: 2:17-CV-287-TLS |

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Supplemental Brief in Support of an Award of Prejudgment Interest [ECF No. 133], filed on January 22, 2024. The Defendant filed a response [ECF No. 134] on February 6, 2024, and the Plaintiff replied [ECF No. 135] on February 14, 2024. For the reasons set forth below, the Court grants the Plaintiff's request for an award of prejudgment interest but from a date and at a rate different than requested.

## PROCEDURAL BACKGROUND

From March 27, 2023, through March 31, 2023, the Court held a bench trial in this case. On December 12, 2023, the Court returned its verdict in favor of the Plaintiff on the claim in its Amended Complaint for freight charges in the amount of $26,800 against Defendant United Transportation Group, Inc. (United Transportation). *See* ECF No. 130.[1] The Court decided to withhold entry of judgment until it determines whether to award prejudgment interest on the

---

[1] However, the Court found that the Plaintiff was not entitled to a verdict in its favor as to the claims (1) remaining against Defendant United Transportation Group, Inc. for demurrage charges and holding charges and (2) against Defendant Michael V. Pellin individually and doing business as United Rail Services Inc. *See* ECF No. 130.

award as requested by the Plaintiff. Correspondingly, the Court entered a scheduling order for briefing the issue, which is now complete.

## LEGAL STANDARD

In the Seventh Circuit, it is well settled that "prejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003) (quoting *Gorenstein*, 874 F.2d at 436). The Court has discretion to decide whether and how to award prejudgment interest, "although there is a presumption in favor of granting such interest." *Frey v. Hotel Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (citations omitted). "The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."). "Consequently, prejudgment interest typically accrues from the date of the loss . . . ." *Am. Nat. Fire Ins. Co.*, 325 F.3d at 935. Nevertheless, a district court does not abuse its discretion when deciding not to award prejudgment interest when "the delay in judgment was occasioned by a legitimate dispute . . . [and] it would be 'grossly unfair' to penalize [the party] for asserting a defense . . . ." *In re Burlington N., Inc. Emp. Pracs. Litig.*, 810 F.2d 601, 609 (7th Cir. 1986).

## DISCUSSION

The Plaintiff requests that the Court grant prejudgment interest on the $26,800 awarded by the Court's verdict, and the Defendant does not oppose some award of prejudgment interest.

However, the parties dispute the date from which the prejudgment interest should be calculated and the applicable interest rate.

First, the parties dispute the date on which the calculation of the prejudgment interest should begin. The Plaintiff argues the calculation should begin on October 1, 2016, because the freight charges were all incurred on or before September 30, 2016. The Defendant argues that the prejudgment interest should begin on July 3, 2017—the date of the Plaintiff's demand based on when the Complaint was filed in the instant action—because the Defendant paid the freight charges in full by check in December 2016 and the Plaintiff declined to cash the check. ECF No. 134 at 2 (citing *United States v. Imperial Food Imports*, 834 F.2d 1013, 1016 (Fed. Cir. 1987)).

The circumstances in this case warrant that the prejudgment interest award accrue from the date of demand. In *Imperial Food Imports*, the trial court found that "the [plaintiff] here lost the use of the funds constituting the liquidated damages award from the date of final demand for payment" "rather than from the earlier date of breach," which the Federal Circuit held was not an abuse of discretion because "[t]he trial court obviously considered [the circumstances] in balancing the equities." 834 F.2d at 1016. Here, the Defendant already paid the Plaintiff the $26,800 owed in freight charges by check in December 2016, and the Plaintiff did not cash the check. *See* ECF No. 130 at 18–19. Thus, the Plaintiff lost the use of funds from the date of demand rather than from the earlier date that United Transportation owed the freight charges.

The Plaintiff does not dispute that the Defendant already paid the Plaintiff by check or that the Plaintiff did not cash the check, but instead presents caselaw demonstrating that prejudgment interest should be calculated at the time the claim accrues. *See* ECF No. 135 at 1 (citing *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2005 WL 293512, at *2 (N.D. Ill. Feb. 8, 2005)). Even though prejudgment interest has been awarded in

3

other cases as of the time a plaintiff's claim accrued, those awards are usually in cases where the defendant had not paid the amount owed near the time the claim accrued. For example, in *Premium Tobacco Stores*, *Inc.*, the defendant argued that the plaintiff's claim "arose only at the time of the verdict" when the jury awarded $3,560,002 in 2004. 2005 WL 293512, at *1, 2. That court explained that the amount that "the jury awarded was based on the testimony of Robert Mazur, [the defendant's] chief financial officer, regarding the net profits [the defendant] garnered as of early 2000 . . . ." *Id*. As a result, the court concluded that "[i]n the eyes of the law, [the defendant's] obligation to pay that amount to [the plaintiff] immediately began at that point, not once the trial had culminated." *Id*.

The *Premium Tobacco Stores*, *Inc.* court reasoned that "[the plaintiff] did lose the use of the profits that [the defendant] made as of the time of sale and must now be compensated for the lost time value of those profits in order to be made whole." *Id*. Absent from the facts of *Premium Tobacco Stores*, *Inc.* are the facts of this case of a defendant that paid the amount owed in full by check near the time the plaintiff's claim accrued and a plaintiff that intentionally did not cash the check. In this case, calculating prejudgment interest from October 1, 2016—the date the Plaintiff asserts its claim accrued—does not appear to serve the purpose of making the Plaintiff whole. In balancing the equities under the circumstances, the Court concludes that the Plaintiff lost the use of the $26,800 on the date of demand, July 3, 2017 (when the Plaintiff filed its Complaint in this case). Therefore, the prejudgment interest is to be calculated beginning on July 3, 2017.

Second, the parties dispute which interest rate the Court should apply to the calculation of prejudgment interest. The Plaintiff argues that the Court should apply an unsecured loan rate of 8%, and the Defendant argues that the Court should apply the average prime rate of 5.1%. For an award of prejudgment interest, the Seventh Circuit Court of Appeals has instructed district courts

4

to "use the prime rate for fixing prejudgment interest where there is no statutory interest rate." *Gorenstein*, 874 F.2d at 436. The court explained,

> That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default. The defendant who has violated the plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected. At any time before actual payment or collection of the judgment the defendant may default and the plaintiff come up empty-handed. The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered in deciding what a compensatory rate of interest would be.

*Id*. The court further explained that it chose "the prime rate for convenience; a more precise estimate would be the interest rate paid by the defendant for unsecured loans." *Id*. at 437.

However, the "practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest." *First Nat. Bank of Chi. v. Standard Bank & Tr*., 172 F.3d 472, 480 (7th Cir. 1999). To "award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation." *Id*. When deciding what rate to apply, a district court must "reasonably weigh[] the evidence in accordance with the applicable principles." *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1115 (7th Cir. 1998).

Here, the Plaintiff's claim for freight charges was brought under the Interstate Commerce Act; and no statute governs the calculation of the prejudgment interest rate for such a claim. Other than notifying the Court of factors not at issue in this case and the range of the prime rate during the time period at issue, the Plaintiff does not offer any justification for applying the unsecured loan rate or cite to any support for how it arrived at the 8% rate it proposes. Without such evidence, the Court has no basis for taking an approach other than applying the prime rate.

5

*See Gorenstein*, 874 F.2d at 436; *Cement Div., Nat'l Gypsum Co.*, 144 F.3d at 1115; *First Nat. Bank of Chi.*, 172 F.3d at 480.

To arrive at the rate of 5.1%, the Defendant cites the average prime rate from July 3, 2017, through July 27, 2023. ECF No. 134 at 3 (citing JP Morgan Chase, Historical Prime Rate 2013-2023, https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited Mar. 11, 2024)); Pl. Ex. A, ECF No. 134-1. Given the lack of objection from the Plaintiff to the Defendant's calculation of the 5.1% average prime rate, the Court applies the average prime rate of 5.1% compounded annually and awards the Plaintiff prejudgment interest in the amount of $10,592.49, which represents the accrual from July 3, 2017, through the date of entry of judgment on March 12, 2024.[2] *See Vega v. Chi. Park Dist.*, 351 F. Supp. 3d 1078, 1096 (N.D. Ill. 2018) (awarding prejudgment interest at the average prime rate).

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Plaintiff's request for an award of prejudgment interest but from a date and at a rate different than requested. The Court awards the Plaintiff prejudgment interest on the verdict award of $26,800 in the amount of $10,592.49, which represents the accrual of prejudgment interest from July 3, 2017, through the date of entry of judgment on March 12, 2024, at the average prime rate of 5.1% compounded annually.

---

[2] The parties do not dispute that the prejudgment interest should be compounded annually or that the award of prejudgment interest should be calculated through the date of entry of judgment. To arrive at the prejudgment interest award of $10,592.49, the Court used the formula: $A = P\left(1 + \frac{r}{n}\right)^{nt}$ where A = the amount of award for the freight charges of $26,800 plus prejudgment interest ($26,800 + prejudgment interest), P = the amount of award for freight charges ($28,600), r = the average prime interest rate of 5.1% (0.051), n = number of times compounded per year of once (1), and t = the time from July 3, 2017, though March 12, 2024, in years (2444 days converted to years equals 2444 days * 1 year/365 days which is 6.69589 years). *See BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 981 F.3d 618, 636 (7th Cir. 2020) ("[A] district court may use a formula . . . to calculate prejudgment interest.").

The Court DIRECTS the Clerk of Court to enter final judgment:

1. in favor of Plaintiff Indiana Harbor Belt Railroad Company on its claim in its Amended Complaint for freight charges in the amount of $26,800, as well as $10,592.49 in prejudgment interest, against Defendant United Transportation Group, Inc.;

2. in favor of Defendant United Transportation Group, Inc. on the Plaintiff's remaining claims against it for demurrage charges and holding charges in the Amended Complaint; and

3. in favor of Defendant Michael V. Pellin, individually and d/b/a United Rail Service Inc. on all claims against him in the Amended Complaint.

SO ORDERED on March 12, 2024.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT